42 589
f101 458

FOR THE

## MIDDLE DISTRICT,

## 1856.

COUNTY OF SAGADAHOC.

RICHMOND BANK *versus* JAMES D. ROBINSON.

Courts of justice will not enforce contracts made in violation of law.

The Act of 1841, c. 77, prohibits banks from making loans upon the pledge of its own stock; or from discounting paper without at least two responsible names as principals, indorsers or sureties, or adequate collateral security; or from making any loan to any stockholder of the bank until the amount of his shares shall have been paid in. Notes or other securities discounted in violation of these and like prohibitory provisions of statute cannot be enforced by legal process.

In this class of cases, the contract itself being made in direct violation of the statute, is illegal. The violation of certain other provisions of the law designed to regulate the manner in which the general business of banks shall be conducted for the security of the stockholder and the safety of the public, does not affect the validity of contracts between the bank and its ordinary customers. It may afford ground for an injunction or work a forfeiture of the charter.

A director in a bank indorsed a note which was discounted at his bank, he at the time being liable to the bank for a greater amount than was authorized by the Act of 1841, c. 77, § 19 : — *Held*, that as to *him* the violation of that provision was entirely collateral ; it did not enter into or affect *his* contract.

Richmond Bank v. Robinson.

ON REPORT from *Nisi Prius*, GOODENOW, J., presiding.

This was an action of assumpsit on a promissory note.

The facts in this case are given in the opinion of the Court.

It was agreed that the full Court should render such judgment as justice required, with power to make such inferences of fact as a jury might lawfully make.

*C. W. Larrabee* and *Bronson & Sewall*, for plaintiff, contended that the consideration of a negotiable promissory note cannot be inquired into in an action between the *bona fide* holder for value, taken before its maturity, and the maker, unless it was void at its inception. Byles on Bills, 98, note 1, Am. Ed.; Ib. 192; *Goddard* v. *Lyman*, 14 Pick. 268; Story on Prom. Notes, § § 190, 191, 192, 193, 194, 195, note 1st ed., and cases there cited; Chitty on Bills, 99, old paging, 95, 12th Am. ed., note 1, and cases there cited; *Smith* v. *Hiscock*, 19 Maine, 102; *Malbon* v. *Southard*, 36 Maine, 147; 3 Kent's Com., 1st ed., 79; *Calden* v. *Bellington*, 15 Maine, 398; *Thompson & al.* v. *Shepsum*, 12 Met. 311.

*Gilbert*, for defendant, cited : —

Act of amendment of April 16, 1841, § 19, p. 753, of the R. S. of 1841; Chap. 238 of Laws of 1856.

RICE, J. — Assumpsit on a promissory note, signed by the defendant, payable to Foster & Spaulding, and by them indorsed to the plaintiffs, by whom it was taken in renewal of a former note of the same parties, and for a like amount, which had been discounted by the bank. No copy of the note has been furnished us.

The evidence shows that Foster, one of the indorsers, was, at the time the note was received by the plaintiffs, a director in the bank; that the capital stock of the bank was seventy-five thousand dollars; and that Foster was then liable to the bank, either as principal, surety or indorser, to an amount exceeding eight per cent. of its capital stock.

The defence relied upon is, that the note in suit was received by the bank in violation of law. To sustain this defence, reliance is had on the following provision of § 19, of

c. 77, of Act of Amendment to the R. S.:— "The aggregate of all the debts due from the directors, as principals, indorsers or sureties, shall, at no time, exceed one-third part of the capital of such bank; nor shall the debts due from any one director, as principal, indorser or surety, exceed eight per cent. of the capital stock."

That courts will not lend their aid to enforce contracts made in violation of law, is a principal too well settled and familiar to require the citation of authorities in its support.

The banking law, c. 77, prohibits banks from making loans upon the pledge of its own stock, or from discounting paper without at least two responsible names as principals, indorsers or sureties, or adequate collateral security; or from making any loan to any stockholder until the amount of his shares shall have been paid into the bank. Notes, or other securities, discounted in violation of these and like prohibitory provisions of the statute, cannot be enforced by legal process. *Springfield Bank* v. *Merrill & al.*, 14 Mass. 322. In this class of cases, the contract itself is illegal, being made in direct violation of the prohibition of the statute.

The same statute contains another class of provisions, designed to regulate the manner in which the general business of banks shall be conducted, or to adopt general rules and regulations for their procedure. Such, for instance, as that the capital stock shall be paid in within a given time; that no stockholder shall, at any one time, hold or own more than one-fifth of the capital of any bank; that no shares in the capital stock of any bank shall be sold or transferred, except in certain specified cases, until the whole amount of the capital stock shall have been paid in; that the directors shall make half yearly dividends of the profits of the bank; that the cashier and clerks, before they enter upon the duties of their respective offices, shall be sworn and give bonds, and many others of a similar character. These provisions were designed for the security of the stockholders of banks and the safety of the public. They do not enter into and affect the validity of contracts between the bank and its ordinary cus-

tomers.  Their violation may afford ground for the interposition of the public authorities by way of injunction, or prohibition, and cause for a forfeiture of charter or corporate privileges, but cannot be inquired into by a debtor of the bank, in defence of a note or other security received by it in its ordinary course of business, and not in violation of any of the prohibitory provisions of law.

Of this general character are the provisions of the statute already cited, and relied upon by the defendant.  They are not of that class of prohibitions which enter into the ordinary contracts of banks with their customers, and render such contracts illegal.  That such is the construction of this provision of the statute intended by the Legislature we think is apparent, from the provisions of c. 238 of laws of 1856, cited also by defendant.  The second section of that Act reads as follows; " The said cashier of every bank shall also make returns to the Secretary of State of the liability of the president and directors of the several banks, as principals or sureties in their individual capacity, and as members of a firm or the agents or officers of any corporation."

These returns are required to inform the public of the condition of the banks, and that the State authorities may know whether any of those provisions of law designed for the protection of the public and of the stockholders have been violated.

In this case the directors may, in case loss shall be sustained by the bank by reason of their mismanagement, or from violation of the provisions of the statute referred to, have rendered themselves individually liable for such loss, or have rendered their bank liable to injunction or other process in behalf of the State, but the defendant cannot avail himself of this failure on their part to observe these requirements of the statute; as to *him* that violation was entirely collateral; it did not enter into or affect *his* contract.  *Little* v. *O'Brien*, 9 Mass. 423.  A default must therefore be entered.

TENNEY, C. J., and GOODENOW, MAY and HATHAWAY, J. J., concurred.